**67 So.2d 580**

**Succession of DOBRONICH.**

**No. 40579.**

July 3, 1953.

Rehearing Denied Oct. 6, 1953.

George Sladovich, Jr., A. Melville Wolfson, New Orleans, for appellants.

Ernest J. Robin, Arthur V. Flotte, New Orleans, for appellees.

FOURNET, Chief Justice.

Mr. and Mrs. George Dobronich, legal ascending heirs (father and mother) of

Mark Dobronich, deceased (who died without issue), and Thomas S. Buckley, Inheritance Tax Collector for the Parish of Orleans, are appealing from a judgment of the District Court decreeing that the cash enclosed in ten sealed envelopes, without mark indicating ownership of the contents but bearing the initials of Claire G. Dobronich engraved on the flaps (nine containing $500 and the tenth, $480), found among securities in a bank box held in the name of Mrs. Claire Dobronich at the time of the death of her husband, Mark Dobronich, formed no part of the community of acquets and gains existing between Claire and Mark Dobronich but is the property of Mrs. Olivia G. Flick and her husband, Peter H. Flick, the sister and brother-in-law of Mrs. Claire Dobronich, and ordering the payment of the money to them.

This case presents a question of fact only, and the trial judge in his written reasons declared that he was satisfied from the evidence that the $4,980 is the property of Mr. and Mrs. Flick, appellees. After carefully studying and analyzing the evidence we cannot say that the trial judge erred in his conclusion.

The record reveals that the two sisters, Mrs. Flick and Claire Dobronich, have for some eighteen years lived in a double house on Kentucky Street, in New Orleans, one side being occupied by the Flicks and the other by Claire Dobronich and her mother, now deceased. (Mark Dobronich was seldom there due to estrangement between him and Claire.) According to the testimony of the sisters, Mrs. Flick had accumulated, from her separate earnings and through savings over a period of years, for the intended purchase of a home, the sum of $5,000, and being distrustful of banks because of certain difficulty experienced by her mother in the past, kept this money in her house, locked in a chest; in the summer of 1948, being in constant attendance on her invalid mother, she became worried that her house might be robbed (Mr. Flick worked at night) and entrusted the money to her sister for safe keeping in the latter's bank box until she and her husband were able to find a place to their liking. Claire Dobronich was employed during all of her married life and had savings and checking accounts, as well as the bank box, to which she alone had access and of which only she, her mother and Mrs. Flick had knowledge. The money, handed over in bills of small denominations, was converted by Claire at a bank to larger bills and placed in the ten envelopes from her personal stationery which she had taken along for the purpose—the explanation being that she counted the money in stacks of $500, separated it for convenience, and was under the impression that all ten envelopes held an equal amount. She then sealed and placed them in the safety deposit box, where they have remained ever since and where they were found upon search by the notary after the death of Mark Dobronich.

This testimony was not in any way contradicted. The appellants, relying solely on the presumption of law that property found in the possession of the wife at the death of her husband belongs to the community, have sought to discredit the testimony of these two witnesses by arguing that although Claire Dobronich claims to have made out a receipt and to have hidden it in a safe place (the location being known to her sister), it was nevertheless never produced in court; they question the probability of the saving of $5,000 by the Flicks from the salary earned by Mr. Flick during the preceding years; and they submit that the purchase of items on credit during recent years (a washing machine, bedroom set, and automobile) is not consonant with the ownership of $5,000 cash. This is not sufficient, in our opinion, to overcome the positive testimony outlined above.

Moreover, the appellants have totally failed to show any motive which would have prompted Claire Dobronich to attempt to deprive her husband's parents of the small amount (less than $1,250) which would be theirs by inheritance were the $4,980 included in his estate—the inventory of which amounted to considerably more than $50,000. Not only is the record bare of any suggestion of animosity between these parties, but it clearly reveals that Claire had sole access to a large amount of cash, and if she had been motivated by a desire to withhold funds from the succession she was in a position to do so. Mark Dobronich, who owned boats and was in the business of renting them to oil companies, was apparently short of cash and often needed money for payrolls; Claire regularly loaned her husband various sums, as evidenced by her checks made payable to him, with the notation "Loan" in the left hand corner, and marked "For deposit" to his credit. Accounts in homesteads and banks at the time of Mark's death amounted to more than $12,000, yet of this money he had access to one account only, with a small balance of $415. A consideration of these facts is inconsistent with the collusion charged by counsel for the appellants, and supports the testimony which appears in the record.

For the reasons assigned, the judgment appealed from is affirmed.